# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Lynchburg Division

GUGGENHEIMER HEALTH & REHABILITATION )
CENTER, *authorized representative of* Charles E. Bedat, )
                                       )
       Plaintiff,                          )
                                         )
v.                                              )   Civil No.: 6:17CV00079
                                         )
DANIEL CAREY, *in his official capacity as* )
*the Secretary of Health and Human Resources,*[1] )
                                         )
and                                         )
                                         )
JENNIFER S. LEE, *in her official capacity as Director* )
*of the Department of Medical Assistance Services,*[2] )
                                         )
       Defendants.                      )
_____)

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

      COMES NOW Defendant Daniel Carey, Commonwealth of Virginia's Secretary of the

Health and Human Resources, and Defendant Jennifer S. Lee, Director of the Virginia

Department of Medical Assistance Services, by counsel, respectfully submits this Reply in

Support of its Motion to Dismiss and moves this Honorable Court to dismiss the Complaint with

prejudice.

---

[1] Substitution of Defendant William A. Hazel, Jr. with Daniel Carey, Commonwealth of Virginia's Secretary of the Health and Human Resources effective January 13, 2018, by Order entered March 12, 2018. *See* ECF Doc. No. 20.
[2] Substitution of Defendant Cynthia B. Jones with Jennifer S. Lee, Daniel Carey, Director of the Virginia Department of Medical Assistance Services effective January 13, 2018, by Order entered March 12, 2018. *See* ECF Doc. No. 20.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 3

ARGUMENT ................................................................................................................... 5

I.  Guggenheimer Lacks Standing to Pursue Claims as a Representative for Charles Bedat
and in an Organizational Capacity ............................................................................... 5

    A. The Definition of Authorized Representative is Strictly Defined by 42 C.F.R.
§ 435.923 and Does Not Include the Right to File a Lawsuit ................................. 5

    B. 42 C.F.R. § 435.923 Defers to State Law Regarding Issues of Mental Capacity ........ 7

    C. Guggenheimer Failed to Plead or Demonstrate it has Organizational Standing .......... 9

II.  Guggenheimer's Response to the Defendants' Arguments Regarding Collateral Estoppel
is an Argument Attacking Hearing Officer McGowen's Decision ................................... 11

III.  Guggenheimer's Claims are Barred by the *Rooker-Feldman* Doctrine ............................ 13

IV.  Guggenheimer's Claims are Barred by the *Younger* Abstention Doctrine ....................... 14

V.  The Request for Compensatory Damages is Prohibited by the Eleventh Amendment and
the Request for an Order Directing Payment of Medicaid Benefits is not Within the
Court's Jurisdiction ................................................................................................. 15

VI.  Guggenheimer Has Not Alleged Facts That Would Entitle it to Relief .......................... 16

    A. Due Process ....................................................................................................... 16

    B. A Disability Does Not Qualify an Individual for Medicaid Coverage ...................... 18

    C. Guggenheimer Fails to Allege Facts Necessary for Violation of the Medicaid Act ... 19

CONCLUSION ................................................................................................................ 20

CERTIFICATE OF SERVICE ........................................................................................... 21

## INTRODUCTION

Guggenheimer Health and Rehabilitation Center ("Guggenheimer") has failed to provide a basis for this Court's jurisdiction. Guggenheimer asserts it has standing because of its unlimited authority as an authorized representative to file a lawsuit asserting claims that are either moot or barred. Guggenheimer offers no convincing argument that the allegations in the Complaint are not barred individually or by a combination of the Eleventh Amendment, collateral estoppel, the *Rooker-Feldman* doctrine, and the *Younger* Abstention doctrine. Nor has Guggenheimer alleged all of the elements or sufficient facts from which this Court could base a viable claim for relief. As such, the Complaint must be dismissed for lack of subject matter jurisdiction or, alternatively, for failure to state a claim.

Guggenheimer alleged that Charles Bedat ("Bedat") suffers from dementia and other cognitive aliments, and thus, Bedat does not have the mental capacity to manage his day-to-day affairs. However, in its Response to the Defendants' Motion to Dismiss, Guggenheimer argues that despite its own statements concerning Bedat's mental state, he had enough mental capacity on a date unknown to execute a designation of authorized representative form in which he waived confidentiality over his personal information, waived unidentified conflicts of interest, gave Guggenheimer a measure of control over his assets, gave Guggenheimer access to information that it otherwise may not have had, and allowed Guggenheimer to use this information in any action it may pursue against him.

For purposes of a Motion to Dismiss, the allegations in a Complaint must be taken as true. If an individual is incapacitated as stated by Guggenheimer, then the determination of who can act on behalf of that individual is governed by state law. Because it does not have the legal authority to pursue this cause of action under Virginia law, Guggenheimer does not have standing to represent Bedat's interests.

Guggenheimer's Complaint is a solicitation to overturn a state administrative appeal decision. If the requested relief is granted, then this Court will effectively overturn Virginia Department of Medical Assistance Services' Hearing Officer McGowen's findings of fact and conclusions of law. Guggenheimer urges this Court to find that notice of action denying Bedat's Medicaid application was inadequate. This issue, however, was raised by Guggenheimer in the administrative appeal. Hearing Officer McGowen's decision found that the notice of action denying Bedat's Medicaid application provided the required information and was therefore sufficient. Therefore, Guggenheimer is collaterally estopped from raising the issue of whether notice was sufficient.

Guggenheimer's claims are either moot or barred under the *Rooker-Feldman* or *Younger* Abstention doctrines. Hearing Officer McGowen's written decision was a final agency decision that was rendered in a judicial capacity. Guggenheimer filed an untimely Petition for Appeal with the Lynchburg Circuit Court seeking judicial review of Hearing Officer McGowen's decision and then sought to non-suit that appeal. If the order granting the non-suit is a final order, Guggenheimer's claims are barred under the *Rooker-Feldman* doctrine. If the order is not a final order because the Lynchburg Circuit Court lacked authority to grant a non-suit in an appeal of an administrative decision, then Guggenheimer's claims are barred under the *Younger* Abstention doctrine.

Guggenheimer's Complaint fails to state a claim. Guggenheimer's claim of a due process violation is a mask that covers its disagreement with Hearing Officer McGowen's decision. Guggenheimer does not allege additional facts or arguments that were not or could not have been raised for Hearing Officer McGowen's consideration. Guggenheimer filed a notice of appeal that challenged whether adequate notice was provided to Bedat. A hearing on this issue and

opportunity for any related issues to be raised was heard before Hearing Officer McGowen, who then rendered a written decision that determined that notice provided to Bedat denying his Medicaid application was sufficient.

Moreover, Guggenheimer's claims under the Disabilities and Rehabilitation Acts are based upon the incorrect notion that an individual who has a disability automatically qualifies for Medicaid. The provision of Medicaid benefits is not an accommodation owed to an individual by virtue of the fact that he may be disabled. A disability may qualify an individual for Medicaid but only if he meets all the other eligibility requirements. Bedat did not qualify for Medicaid due to excess resources; whether he was disabled was not a factor in the decision.

ARGUMENT

I.  **Guggenheimer Lacks Standing to Pursue Claims as a Representative for Bedat and in an Organizational Capacity**

 A. The Definition of Authorized Representative is Strictly Defined by 42 C.F.R. § 435.923 and Does Not Include the Right to File a Lawsuit

Guggenheimer contends that the definition of a Medicaid "authorized representative" is analogous to a definition of authorized representative found in federal labor law. Response, p. 3. Guggenheimer is incorrect. The definition of a Medicaid authorized representative is controlled strictly by the regulation itself and 42 C.F.R. § 435.923 includes only the ability of the authorized representative to "act . . . on the individual's behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications *with the agency*." 42 C.F.R. § 435.923(b) (emphasis added).

The Center for Medicare and Medicaid Services ("CMS") and U.S. Department of Health and Human Services ("HHS") comments in the Federal Register cited by Guggenheimer do not support its analogy to labor law or its argument that the scope of an authorized representative's authority is unlimited. A commenter asked whether the definition of authorized representative is

the same as the definition that is used by the Social Security Administration.   78 Fed. Reg.
42160, 42175 (July 15, 2013).   HHS responded that the definition was not the same.   *Id.*   In
responding to the question about the scope of the authorization, CMS stated that the applicant or
beneficiary defines the scope of the authorization.   *Id.*   This is not the same as saying the
applicant or beneficiary can appoint the authorized representative to do *anything* on the
individual's behalf.   Rather it is an interpretation by CMS that it is the applicant or beneficiary
that controls the amount of authority an authorized representative has rather than an automatic
assumption that the representative has the full scope of allowable authority.   *Id.*

Further, HHS stated that the definition of an authorized representative was derived from
state policy and practice: "[w]e proposed regulations intended to be consistent with current state
policy and practice, regarding the definition, designation, and responsibilities of "authorized
representatives"…"   *Id.* at 42174.   Therefore, neither the Federal Register comments and
responses nor the regulation text support Guggenheimer's contention.

Moreover, the relationship that is at issue here is between a Medicaid applicant, Bedat,
and his nursing home, Guggenheimer.   Guggenheimer's analogy to labor law authorized
representatives is not similar to the facts of this case.   The procedure to appoint an authorized
representative and scope of an authorized representative's authority is defined by the regulation
itself, which by its plain language is limited to matters with the agency, not lawsuits.   Bedat
controls the scope of authorization, and the Power of Attorney signed by Bedat, which was
witnessed and notarized in compliance with Virginia law, appointed Henry C. Devening, the
Trustee of the Bedat-Porter Trust and a Virginia licensed attorney, as his "true and lawful
attorney, for me and in my name, place and stead, to transact any and all of my business and to
do and perform all acts relating to my property, real, personal and mixed…" Motion to Dismiss,

Exh. 7, p. 1. Thus, Guggenheimer lacks standing to bring a lawsuit as Bedat's authorized representative.

### B. 42 C.F.R. § 435.923 Defers to State Law Regarding Issues of Mental Capacity

Even if 42 C.F.R. § 435.923 could be interpreted to allow an authorized representative to file a lawsuit, Guggenheimer lacks standing to be a representative and bring such an action, because Guggenheimer stated in its Complaint that Bedat lacks mental capacity, suffers from dementia and does not have the ability to manage his own affairs. Complaint, ¶¶ 10-11.

In its Response, Guggenheimer attempts to retract its statement that Bedat does not have mental capacity and is unable to manage his own affairs. Guggenheimer now argues that although Bedat lacked capacity to manage his own affairs, he had the requisite capacity on some unknown date to execute a designation of authorized representative form that waives confidentiality over his personal information, waives unidentified conflicts of interest, gives Guggenheimer a measure of control over his assets, gives Guggenheimer access to information that it otherwise may not have had, and allows Guggenheimer to use this information in any action it may pursue against him. However, the Court must accept the Complaint's statement that Charles Bedat lacked mental capacity and is unable to manage his own affairs as true for purposes of this Motion to Dismiss.

Further, "capacity" is a term specifically used by HHS to determine whether an authorized representative can be designated. 42 C.F.R. § 435.923(a)(2) governs the appointment of a representative when an applicant does not have mental capacity and it provides that the authority to act on behalf of an individual, *e.g.* a power of attorney or a guardian, is accorded under state law. 42 C.F.R. § 435.923(a)(2). HHS reiterated the role of state law when an individual lacks capacity in the Federal Register:

Comment: A few commenters requested additional clarification regarding situations in which an individual is unable to personally elect an authorized representative due to medical incapacity ... Another commenter suggested that legal documentation of authority to act on behalf of an application or beneficiary under state law, such as court order establishing legal guardianship or a power of attorney, should serve in place of written authorizations by the applicant or beneficiary.

Response: Under section § 435.923(a), legal documentation of authority to act on behalf of an applicant or beneficiary under state law, such as a court order establishing legal guardianship or power of attorney may serve in place of the applicant or beneficiary's designation. The option to submit such documentation is intended to enable applicants who do not have the capacity to provide a signature to authorize representation.

78 Fed. Reg. at 42175. If an individual lacks mental capacity and the ability to manage his own affairs, as Guggenheimer asserts in its Complaint, then that individual does not have the capacity to provide a signature waiving rights and authorizing representation, especially when there is no information as to when that signature was provided.

Guggenheimer's reliance upon the Lynchburg Circuit Court's ruling on the Plea in Bar in *Haythe v. Dep't of Medical Assistance Servs.* is misplaced. The Lynchburg Circuit Court failed to address the binding authority of *Richmond Ass'n of Credit Men v. The Bar Ass'n*, 167 Va. 327 (1937) in rendering its opinion.[3] In contrast, the Arlington Circuit Court specifically addressed the Virginia Supreme Court's decision and determined that the designation of authorized representative form, which is identical to the one at issue in this case, did not grant the nursing facility the ability to litigation on behalf of the Medicaid applicant. *See Areevong v. Dep't of Medical Assistance Servs.*, Case No. CL17002252-00 (Arlington Cir. Ct., Dec. 4, 2017 (provided at Motion to Dismiss, Exh. C of Exh. 9); *see also Oakwood Health and Rehabilitation v. Bedford County Dep't of Social Servs.*, et al., Case No. CL17000346 (Bedford Cir. Ct., March 8, 2018) (finding nursing facility lacked standing to bring an appeal under the Virginia Administrative

_____

[3] Under Virginia law, the Lynchburg Circuit Court ruling is not ripe for appeal at this point.

Process Act for a Medicaid applicant) (attached hereto as Exh. 1). Thus, Guggenheimer does not have standing as an authorized representative to bring this action.

### C. Guggenheimer Failed to Plead or Demonstrate it has Organizational Standing

In its response, Guggenheimer, for the first time, claims a new jurisdictional basis that was not identified in its Complaint. Guggenheimer asserts that it has organizational capacity and that its residents are members of its organization. *See* Response, pp. 9-10.

Guggenheimer's Complaint lacks any assertion that this action was brought by it in an organizational capacity. Guggenheimer has in every instance stated that it is the "authorized representative" under 42 C.F.R. § 435.923. In the caption, it identifies itself as "Guggenheimer Health and Rehabilitation, as Authorized Representative for Charles E. Bedat." In the Complaint section titled "Parties," Guggenheimer refers to itself as a "...Virginia corporation and skilled nursing facility...." Complaint, ¶ 1; *see also* Corporate Disclosure (ECF Doc. No. 2). The same paragraph reiterates that Guggenheimer claims to be a Medicaid authorized representative. *Id.*

In the Statement of Facts, Guggenheimer refers to itself as a "skilled nursing facility...dedicat[ing] itself to providing quality, long-term care for its residents." *Id.* at ¶ 9. Guggenheimer then states that Bedat was admitted to Guggenheimer where he receives "care." *Id.* at ¶ 13. Nowhere in the Complaint does Guggenheimer ever refer to itself as an organization with members; and nowhere in its Complaint does Guggenheimer ever refer to Bedat as a "member."

Guggenheimer's argument that it has organizational standing under *Hunt v. Wash. State Apple Adver. Comm'n*, is without merit. Traditionally, organizational standing was afforded to a voluntary membership organization such as a trade association. 432 U.S. 333, 342 (1977). at 342. The issue in *Hunt* was whether the Commission's status as a state agency "precludes it

from asserting the claims of the Washington apple growers and dealers who form its constituency." *Id.* at 344. The apple growers and dealers in *Hunt* possessed all of the indicia of membership in an organization: they were responsible for electing members of the Commission; only they could serve on the Commission; only they were responsible for financing the Commission's activities through assessments levied on them; and the Commission was the entity through which the collective views and interests of the growers and dealers were expressed. *Id.* at 344-45.

None of the indicia of "membership" discussed in *Hunt* are present in this case. Guggenheimer is a corporation that operates a nursing home. *See* ECF Doc. No. 2 (Corporate Disclosure); *see also* Complaint, ¶ 1. Guggenheimer does not have members; it has residents, which are akin to customers. There is no assertion that Bedat or the other residents of Guggenheimer have any say concerning the leadership or policies at Guggenheimer. Neither are there any facts pled suggesting Guggenheimer and Bedat or the other residents have the intimate, collaborative relationship of an association and its members concerning the day-to-day operation of Guggenheimer or its overall goals and direction.

Guggenheimer's reliance upon *Westminister Nursing Home v. Cohen* is similarly misplaced. In *Westminister*, Medicaid recipients assigned a benefit to the nursing home. *Westminister Nursing Ctr. v. Cohen*, 2017 U.S. Dist. LEXIS 193330, at *3 (E.D.N.C. 2017).[4] The benefit could have been applied to a negative balance incurred by the recipients. *Id.* The District Court found that the assignment created organizational standing. *Id.* at *9. Here, Bedat

---

[4] The *Westminister* Court assumed without analysis that public assistance, such as Medicaid benefits, was assignable. Such assignment would be contrary to public policy concerning the provision of assistance based upon the unique circumstances of each applicant. *Cf* 42 C.F.R.§ 447.10 (prohibition against reassignment of Medicaid provider claims).

has not assigned any benefit to Guggenheimer and Guggenheimer has not demonstrated that it is organized for purposes germane to the subject of claims, *i.e.* the Medicaid eligibility of Bedat.

Other Federal District Courts have denied similar requests for organizational standing. In *Hillspring Health Care Center v. Dungey*, the District Court denied the request for organizational standing for a nursing home attempting to represent an individual with an insurance policy that placed him above the financial threshold for eligibility. *Hillspring Health Care Cntr. v. Dungey*, 2018 U.S. Dist. LEXIS 1337 at *2 (S.D. Ohio 2018). First, the Court found that complaint demonstrated that the plaintiff was proceeding as an authorized representative and not as an organization. *Id.* Second, the Court directly addressed *Westminister* by stating:

> Even if Plaintiff had sought to proceed based on associational membership (which it did not), the Court is not persuaded by the non-binding decision in *Westminster Nursing Ctr. v. Cohen*, Case No. 5:17-cv-96, 2017 U.S. Dist. LEXIS 193330 (E.D.N.C. Nov. 22, 2017), on which Plaintiff relies. (Doc. 29-1). Unlike in that case, Plaintiff has not demonstrated that one of its members has standing in his or her own right to pursue the claims. Nor has it demonstrated that it is organized for purposes germane to the subject of these claims, which, in broad strokes, concerns the Medicaid eligibility of an individual with a life insurance policy that allegedly could not be liquidated. Plaintiff is not a voluntary trade organization or association formed to advocate for individuals seeking Medicaid benefits; rather, it is a limited liability company that operates a skilled nursing facility at which it has residents. (Doc. 3, Page Id 21). Plaintiff maintains a business relationship with those residents. This relationship is insufficient for purposes of associational standing.

*Id.* at n. 12. Therefore, Guggenheimer lacks standing to bring this action either as an authorized representative or an organization.

## II. Guggenheimer's Response to the Defendants' Arguments Regarding Collateral Estoppel is an Argument Attacking Hearing Officer McGowen's Decision

Guggenheimer fails to provide any substantive response to the Motion to Dismiss. A party is estopped from raising an issue of law or fact when: (i) the party had an opportunity or

chance to litigate the issue before the administrative agency; (ii) the issue before the administrative agency was essentially the same issue that arose in the subsequent suit; and (iii) the issue was explicitly decided in the administrative agency decision. *B&B Hardware, Inc. v. Hargis Industries*, 135 S. Ct. 1293, 1306-1307 (2015); *see also Nash Cnty Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981); *Moosavi v. Fairfax County Bd. of Education*, 666 F.2d 58 (4th Cir. 1981). In addition, even if an administrative hearing officer lacks authority to decide a constitutional issue, the litigant must still raise that issue at the hearing to preserve it for appeal, and failure to do so is a waiver of those arguments in future proceedings. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000).

Guggenheimer had a fair opportunity to litigate the issue before the Department of Medical Assistance Services. Noticeably absent from Guggenheimer's Response is any authority precluding its claims from being raised or adjudicated by Hearing Officer McGowen. Guggenheimer's Response states that the issue of whether the notice of denying Bedat's Medicaid application was sufficient and Bedat's resourses were not "properly addressed at the hearing." Response, p. 18. Guggenheimer's disagreement with Hearing Officer McGowen's decision is not a denial or lack of opportunity to litigate its claims, and does not allow Guggenheimer to re-litigate in federal court those issues that were or could have been raised before Hearing Officer McGowen.

The issue before Hearing Officer McGowen is the same issue that is raised by the Complaint. Guggenheimer admits in its Response that the issue before Hearing Officer McGowen was whether the notice denying Bedat's Medicaid application was sufficient. Response, p. 18. In its Complaint, Guggenheimer raises the same issue before this Court. *See, e.g.* Complaint, ¶¶ 27, 29, and 57. The issue of whether the notice sent to Bedat was sufficient

was explicitly addressed in the administrative agency decision. *See* Motion to Dismiss, Exh. 1. At no point did Guggenheimer raise the issue of not receiving a response from the local department to Bedat's request for assistance, nor did it raise the delay in the hearing date or the issuance of the Hearing Officer's decision. *See* Motion to Dismiss, Exhs. 1-4, and 8.

Guggenheimer's counsel waited until December 9, 2016, the Friday before the scheduled hearing on Wednesday, December 14, 2016, to contact the Department of Medical Assistance Services ("DMAS") about the Agency Summary. *See* Motion to Dismiss, Exh. 3. Virginia regulation provides that the Medicaid applicant's case file and all documents and records that will be relied upon at the hearing may be requested at a reasonable time before the hearing date. 12 VA. ADMIN. CODE § 30-110-280. Nothing precluded Guggenheimer or its counsel from requesting the Agency Summary prior to December 9, 2016. Guggenheimer provides no authority for its assertion that the Agency Summary was required to be provided a certain number of days before the hearing. Moreover, the re-scheduled hearing occurred on February 6, 2017, which was after January 1, 2017, the 90th day from when Bedat's appeal notice was filed. Neither Guggenheimer nor its counsel raised the issue of the delay in the hearing and the issuance of a decision concerning Bedat's appeal. *See* Motion to Dismiss, Exh. 4.

Hearing Officer McGowen's decision was a final administrative decision that was issued after a hearing and full opportunity for Bedat to litigate any issues concerning the denial of his Medicaid application, including whether the notice of denial was sufficient. Therefore, collateral estoppel prevents Guggenheimer re-litigating issues that were or could have been raised before Hearing Officer McGowen.

### III. *Guggenheimer's Claims are Barred by the* Rooker-Feldman *Doctrine*

Guggenheimer's Response argues the *Rooker-Feldman* doctrine does not apply because the Complaint does not seek to set aside a state court decision. Response, p. 19. Guggenheimer

ignores the applicable Virginia law that rendered its state court appeal dead because Guggenheimer failed to timely file the Petition for Appeal. As such, Guggenheimer was a state court loser who is attempting to initiate an action in federal district court that ultimately seeks review of the claims that are "inextricably intertwined" with the state court decision, such that the federal judgment would conflict with the state court judgment. *See Liedtke v. The State Bar*, 18 F.3d 315 (5th Cir. 1994), *cert. denied* 513 U.S. 906 (1994).

Guggenheimer's requested judgment is inextricably intertwined with the only judgment the Lynchburg Circuit Court could have rendered: dismissal of the Petition for Appeal and affirmation of Hearing Officer McGowen's decision. Defendants would be unable to comply with the conflicting judgments if judgment from this Court required Defendants to provide Medicaid benefits to Bedat when the final decision of the Hearing Officer, affirmed by the state court because of the untimely filing of the Petition for Appeal, does not. Thus, the *Rooker-Feldman* doctrine bars Guggenheimer's claims.

### IV. *Guggenheimer's Claims are Barred by the* Younger *Abstention Doctrine*

If the Lynchburg Circuit Court lacked authority to issue an order granting Guggenheimer's improper request for a non-suit in an appeal brought under the Virginia Administrative Process Act, there has been no final order in the state court action and this Court should abstain under the *Younger* abstention doctrine. Guggenheimer has not provided any argument or authority for why the Lynchburg Circuit Court's Order granting Guggenheimer's request for a non-suit was in accordance with Virginia law or a judgment that properly disposed of the state court action. Moreover, Guggenheimer's statement that "given the limited jurisdiction of administrative courts there was no opportunity to present the federal claims raised in the present action" is contrary to the law. *See Shalala*, 529 U.S. at 23 (2000); *see also* VA. CODE § 2.2-4000 *et seq.* The state court has authority on appeal to decide all constitutional

issues raised and preserved at hearing, and the litigant may later pursue the argument through all levels of appeal. *Id.*

> ### V.    *The Request for Compensatory Damages is Prohibited by the Eleventh Amendment and the Request for an Order Directing Payment of Medicaid Benefits is not Within the Court's Jurisdiction*

The Eleventh Amendment permits prospective relief but not retrospective relief. *See generally Ex Parte Young*, 209 U.S. 123 (1908); *Antrican v. Odom*, 290 F.3d 178, 186 (4th Cir. 2002). Guggenheimer's Response attempts to clarify that it does not seek compensatory and punitive damages and it is seeking payment of Medicaid benefits going forward. Response, p. 11.

Guggenheimer's argument that this case is similar to *D.T.M. v. Cansler* in which Eleventh Amendment immunity did not apply misapplies the law to the facts of this case. In *Cansler*, the North Carolina Department of Health and Human Services ("NCDHHS") reduced or terminated Medicaid benefits received by the plaintiffs. *D.T.M. v. Cansler*, 382 Fed. Appx. 334, 335 (4th Cir. 2010). The plaintiffs in *Cansler* were three children who were denied services they had been receiving and alleged the termination of their benefits was done without a "timely and adequate written notice and a fair hearing and failing to ensure that their benefits continued while their appeals were pending." *Id.* at 336. The Complaint requested declaratory relief for the NCDHHS to:

> (a) continue to provide behavioral health and developmental disability services to all persons who have been receiving them, until Defendant corrects the practices and procedures alleged herein; (b) prospectively reinstate behavioral health and developmental disability services previously provided to the named Plaintiffs and member of the Plaintiff class that were improperly reduced or terminated under the illegal practices and procedures alleged herein; and (c) comply with the *Due Process Clause of the U.S. Constitution* and the Medicaid Act.

*Id.* Under those specific facts, the Court determined Eleventh Amendment immunity did not apply because the action sought was prospective.

In contrast, Guggenheimer's Complaint seeks both retrospective and monetary relief. *See* Complaint, Requests for Relief 3 and 6. Guggenheimer requests that the Court order the Department of Medical Assistance Services to pay for Bedat's Medicaid benefits. Complaint, ¶¶ 94-95. Guggenheimer provides no authority under which this Court has the jurisdiction to deem Bedat financially eligible for Medicaid in Virginia especially when DMAS has made an explicit finding that he is ineligible for Medicaid benefits due to excess resources. *See* Motion to Dismiss, Exh. 1.

### VI.   *Guggenheimer Has Not Alleged Facts That Would Entitle it to Relief*
#### A.   Due Process

Based on the facts alleged by Guggenheimer, the Complaint fails to support a claim that Bedat was deprived of due process. To establish a violation of procedural due process rights, a plaintiff must demonstrate that the state deprived him of a protected liberty or property interest without "notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

Bedat was provided timely notice of the denial of his Medicaid application. Complaint, ¶ 16. Bedat was given an opportunity to appeal that denial and to have a hearing during which all issues arising from the denial could be addressed. *See* Complaint, ¶¶ 18 and 23; *see also* Motion to Dismiss, Exhs. 1 and 4. The issue of whether the notice of denial was sufficient was raised before Hearing Officer McGowen, and the written decision addressed that issue. *See id.*

A disagreement with a Hearing Officer's decision is not grounds for a claim for failure to provide due process. Guggenheimer has not alleged any additional facts that it would have

presented to Hearing Officer McGowen. If Guggenheimer disagreed with Hearing Officer McGowen's then it should have pursued judicial review through Virginia's Administrative Process Act. *See* VA. CODE § 2.2-4000 *et seq.* Instead, Guggenheimer failed to timely file a Petition for Appeal and improperly asked the Lynchburg Circuit Court for a non-suit. *See* Motion to Dismiss, Exh. 6; *see also* Motion to Dismiss, Exh. 9. Thus, it is clear from the facts alleged in the Complaint that there is no basis for a declaration that the Defendants violated the Due Process Clause of the Fourteenth Amendment.

B. <u>Guggenheimer fails to allege facts that would support its 42 U.S.C. § 1983 claims</u>

To establish a claim under 42 U.S.C. § 1983 claim, there must be an assertion that a federal <u>right</u> was violated, not merely a violation of federal law. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106 (1989)). Guggenheimer has the burden of establishing the statute at issue grants an individual "right" within the meaning of § 1983. This burden is met by showing three things: that the statutory provisions are intended to benefit him, that the provision embodies a binding obligation on the governmental unit and not merely a congressional preference for a certain kind of conduct, and that the interest asserted is not so vague or amorphous that it is beyond the competence of the judiciary to enforce. *Id.* at 340-41.

Medicaid benefits are afforded to individuals who meet financial guidelines established by the U.S. Secretary of Health and Human Services and the States. 42 U.S.C. § 1396a(a)(17). Determinations of eligibility are rendered by the state or local agency. 42 U.S.C. § 1396a(a)(5). If a determination of eligibility is denied, then the State Agency must provide an opportunity for a fair hearing before it. 42 U.S.C. § 1396a(a)(3). There is no protected property interest in

Medicaid benefits for a person who has never been granted such benefits. *Johnson v. Guhl*, 91 F. Supp. 2d 754, 759, 772 (D. N.J. 2000); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004).

Guggenheimer alleges Defendants violated 42 U.S.C. § 1396a(a)(10) because they failed to provide Bedat with Medicaid benefits placing him at risk of being discharged from Guggenheimer thereby jeopardizing Bedat's health, safety, and well-being. Complaint, ¶ 55. The Complaint is devoid of any factual allegations that Bedat has been denied nursing home services. To the contrary, the Complaint asserts that Bedat is receiving nursing services at Guggenheimer. Complaint, ¶ 12. Therefore, the Complaint fails to allege facts that Bedat has a protected property interest or that Bedat has not received the nursing services he requires and the claims under § 1983 must be dismissed.

C. A Disability Does Not Qualify an Individual for Medicaid Coverage

Guggenheimer contends that the Defendants must provide Bedat with Medicaid benefits because of his disability. Response, p. 24. Guggenheimer is incorrect. To state a claim for discrimination under the Americans with Disabilities Act and the Rehabilitation Act, Guggenheimer was required to plead facts which establish that Bedat: (1) is a qualified individual with a disability, (2) was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) that this exclusion, denial of benefits, or discrimination was because of the plaintiff's disability. *Robertson v. Las Animas Cty. Sheriff's Dep't.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

The Complaint admits that Bedat was denied Medicaid benefits because he was determined to be over resourced. Complaint, ¶ 16. The Complaint lacks any allegation that the denial of Bedat's Medicaid application was because he failed to provide information or that information submitted was untimely. Moreover, the Complaint and Response assert that Bedat's

financial information and necessary verifications were obtained by the local department. *See* Complaint, ¶ 45; Response, p. 18. As such, Guggenheimer's own allegations refute the claims that Bedat's application was denied because of his disability; that is, based on any inability to timely provide necessary financial information.

D. Guggenheimer Fails to Allege Facts Necessary for Violation of the Medicaid Act

Guggenheimer has failed to allege facts that would support a claim for violation of the Medicaid Act. Medicaid benefits are afforded to individuals who meet financial guidelines established by the U.S. Secretary of Health and Human Services and the States. 42 U.S.C. § 1396a(a)(17). Determinations of eligibility are rendered by the state or local agency. 42 U.S.C. § 1396a(a)(5). If a determination of eligibility is denied, then the State Agency must provide an opportunity for a fair hearing before it. 42 U.S.C. § 1396a(a)(3).

The Complaint is devoid of any facts that Bedat met the financial eligibility requirements to receive Medicaid benefits in Virginia. Guggenheimer's claim is based upon an assumption that Bedat qualifies for Medicaid services. Complaint, ¶ 72. Guggenheimer's argument that the allegations in the Complaint that Bedat is "insolvent" and needs Medicaid benefits to pay for his care and assistance are sufficient to allege Bedat meets the financial eligibility requirements for Virginia's Medicaid program is without support or merit. *See* Response, p. 28. In contrast the record demonstrates that Bedat's financial resources rendered him ineligible for Medicaid benefits. *See* Motion to Dismiss, Exh. 1. Because Guggenheimer's Complaint fails to allege facts showing that Bedat met the financial eligibility requirements for Medicaid benefits in Virginia, Guggenheimer has failed to assert a claim for violation of the Medicaid Act.

Accordingly, the Complaint must be dismissed.

CONCLUSION

For the foregoing reasons, Secretary Daniel Carey and Director Jennifer S. Lee respectfully request that the Court grant its Motion to Dismiss the Complaint in its entirety.

Respectfully submitted,

DANIEL CAREY, *Secretary of Health and Human Services*, and

JENNIFER S. LEE, *Director of the Department of Medical Assistance Services*, by counsel

By: _____ /s/ Michelle A. L'Hommedieu _____
    Michelle A. L'Hommedieu (VSB No. 76952)
    Assistant Attorney General
    OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
    202 North 9th Street
    Richmond, Virginia 23219
    (804) 786-6005
    (804) 371-8718 facsimile
    MLHommedieu@oag.state.va.us

MARK R. HERRING
Attorney General

CYNTHIA V. BAILEY
Deputy Attorney General

KIM F. PINER
Senior Assistant Attorney General

MICHELLE A. L'HOMMEDIEU*
Assistant Attorney General

*Counsel of Record*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2018, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system, which will then send a notification of
such filing to the following:

Kathleen C. Morris, Esq.
Katie Z. Van Lake, Esq.
sb2, Inc.
1426 N. 3rd Street, Suite 200
Harrisburg, Pennsylvania 17102
Telephone: (717) 712-3131
Facsimile: (717) 909-5925
kmorris@sb2inc.com
kvanlake@sb2inc.com
*Attorneys for Plaintiff*

/s/ Michelle A. L'Hommedieu
Michelle A. L'Hommedieu (VSB No. 76952)
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North 9th Street
Richmond, Virginia 23219
(804) 786-6005
(804) 371-8718 facsimile
MLHommedieu@oag.state.va.us
*Counsel for Defendants*