UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
04/17/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
    DEPUTY CLERK

| | |
|---|---|
| GUGGENHEIMER HEALTH & REHABILITATION CENTER, AUTHORIZED REPRESENTATIVE FOR CHARLES E. BEDAT,<br><br>*Plaintiff*,<br><br>v.<br><br>DANIEL CARY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES, *ET AL.*,<br><br>*Defendants*. | CASE NO. 6:17-cv-00079<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Guggenheimer Health & Rehabilitation Center ("the Center"), purporting to act for Charles E. Bedat, filed suit against Virginia's Secretary of Health and Human Resources and its Director of the Department of Medical Assistance Services (collectively, "Defendants"). The Center is a long-term nursing home, and Mr. Bedat is an elderly, disabled resident who receives 24-hour care from it. The crux of the complaint is that Defendants' denial of Bedat's application for Medicaid benefits—which he needs to pay the Center—violated due process, various provisions of Medicaid, the Americans with Disabilities Act, and the Rehabilitation Act. The Center attached to its complaint an undated "designation of authorized representative" form signed by Bedat, which the Center contends authorizes it to sue on his behalf. Defendants moved to dismiss on several grounds, *e.g.*, sovereign immunity, estoppel, *Rooker-Feldman* doctrine, *Younger* abstention, and failure to state a claim. They also argued that the Center cannot litigate Bedat's rights and thus lacks standing.

The complaint alleges that Bedat suffered "dementia and other cognitive" ailments and that he "lacked mental capacity and/or the ability to manage his own affairs," thus negating the validity of the designation form and the Center's concomitant standing to sue on his behalf.

Even if Bedat's incapacity does not undercut the designation form, then the executed, dated, notarized, and heretofore unrevoked power of attorney he granted to attorney Henry C. Devening before the initiation of this lawsuit does. Also, the Center does not have organizational standing. Without a basis to litigate Bedat's claims for him, the Center lacks standing, and the case must be dismissed without prejudice.

## STANDARD OF REVIEW

There are two kinds of motions to dismiss under Rule 12(b)(1) for lack of jurisdiction. Both are implicated here. When a defendant makes a facial challenge to jurisdiction, the familiar *Twombly*/*Iqbal* standard applies—the court assumes the truth of all well-pled facts, disregards legal conclusions, and analyzes whether the facts satisfy the law's requirements for jurisdiction. *See Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a factual challenge, however, a defendant asserts that some extrinsic fact undermines jurisdiction, in which case the court regards "the pleadings' allegations as mere evidence on the issue" and may "consider materials outside the pleadings." *The Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 523 F.3d 453, 459 n.6 (4th Cir. 2008); *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## ANALYSIS

The Center is a Virginia corporation located in Lynchburg, Virginia. (Complaint ¶ 1). Bedat was admitted to the Center on January 11, 2016, and has received care from it since that date. (*Id*. ¶ 12). According to the complaint, Bedat "is an elderly, disabled man who suffers from various medical conditions, including dementia and other cognitive physical ailments, that

require him to receive twenty-four hour care and assistance." (*Id*. ¶10). He allegedly "lacked mental capacity and/or the ability to manage his own affairs." (*Id*. ¶ 11).

The Center alleges that "Bedat designated [the Center] as his Authorized Representative" sometime before October 3, 2016. (Complaint ¶¶ 1, 19). The basis of this authorization is a form attached to the complaint and signed by Bedat. (Dkt. 1-1). The form states that it "authorizes specific person(s) from the facility to handle the resident's dealings with Medicaid." (*Id*.). It purports to authorize "Vicky Campbell" at the Center "to be [Bedat's] authorized representative," and "also authorize[s] any employees or agents of the [Center], including attorneys hired by the [Center], to now represent [Bedat] when . . . taking action as necessary to establish [his] eligibility for Medicaid." (*Id*.). The form further states that Bedat "understand[s] and agree[s] that any legal proceeding in regards to [his] Medicaid eligibility may be pursued either in [his] name or in the name of the facility," and it purports to waive "any potential or actual conflicts of interest, which may exist from this appointment of authorized representation." (*Id*.).

In June 2016, six months after his admission to the Center, Bedat applied for Medicaid coverage. (Complaint ¶ 14). But for the denial of coverage, Medicaid would have paid Bedat, funds which then would have paid for his care at the Center. (*Id*. ¶¶ 13, 46). The Center alleges that Defendants denied Bedat coverage in September 2016 because he was "over resourced," (*id*. ¶ 16), and Bedat undertook an administrative appeal, which was denied on March 1, 2017. (*Id*. ¶¶ 18–24). The Center then filed this lawsuit through counsel in November 2017.

The default rule in federal court is that one may litigate only his own rights and interests, not those of others. *See*, *e.g.*, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006); *Laird v. Tatum*, 408 U.S. 1, 13–14 n.7 (1972); *Freilich v. Upper Chesapeake Health, Inc.*, 313

F.3d 205, 215 (4th Cir. 2002) (holding doctor had no standing to assert patients' ADA claims and observing "longstanding principle that third parties themselves usually will be the best proponents of their own rights"); *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007); *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005); *Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (holding plaintiff cannot act "as a knight-errant" for others). "To have standing, it is elementary that the [plaintiff's] own interests must be implicated." *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (Stevens, J., dissenting).

The Center, however, claims that it may litigate on behalf of Mr. Bedat because it is, as the complaint's caption states, his "authorized representative."[1] That authorization, it says, springs from the designation of authorized representative form.[2]

In Virginia, a person lacking mental capacity cannot enter into a valid agreement. *E.g.*, *Edmunds v. Chandler*, 203 Va. 772, 777 (Va. 1962) (affirming lack of mental capacity for person with IQ of 51 and mental capability of a seven-year-old).[3] One is competent to enter an agreement if he or she "has sufficient mental capacity to understand the nature of the transaction and agree to its provisions." *Jones v. Peacock*, 267 Va. 16, 19 (Va. 2004). And, as the Center correctly observes, every adult is presumed competent. *Brown v. Resort Developments*, 238 Va.

---

[1] If there was any doubt, the Center in its response brief disavowed any claims of its own and reiterated that "[a]ll claims and all requests for relief are on behalf of Mr. Bedat." (Dkt. 18 at ECF 37).

[2] The Court can consider attachments to the complaint when evaluating a Rule 12(b)(6) motion or, in the present instance, a facial Rule 12(b)(1) motion, as the standards of review for both are the same. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Ben-Davies*, 695 F. App'x at 676.

[3] The parties agree that Virginia law applies to the question of competency. Dkt 11-1 (Defs' Br.) at 7; dkt. 18 (Pl's Br.) at ECF 18–19; *see Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 400 & n.5 (4th Cir. 2005); Fed. R. Civ. P. 17(b); Complaint ¶ 1 (alleging the Center is a Virginia corporation and that Bedat receives 24-hour care in Lynchburg, Virginia).

527, 529 (Va. 1989); *Bigger v. Doe*, 960 F.2d 145, at *4 (4th Cir. 1992) (applying Virginia law to determine competency); *Bailey v. Bailey*, 54 Va. App. 209, 215 (Va. Ct. App. 2009); *Drewry v. Drewry*, 8 Va. App. 460, 467 (Va. Ct. App. 1989); *e.g.*, *Chesapeake & O. Ry. Co. v. Mosby*, 93 Va. 93, 24 S.E. 916, 916 (Va. 1896). But the face of the complaint plainly alleges that Bedat was stricken with "dementia" and other cognitive ailments, "lacked mental capacity," cannot manage his own affairs, and requires 24/7 care and assistance. (Complaint ¶¶ 10–11). The Court holds that these allegations are overwhelmingly sufficient to rebut the presumption of competency.[4]

The Center's brief resists this conclusion, asserting that "[n]owhere does Mr. Bedat allege that he lacks *all* mental capacity or that he was incapable of *any* type of competency." (Dkt. 18 at ECF 17 (emphasis added)). The Center cannot run away from the complaint's allegations so easily. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (requiring courts to "assume the[] veracity" of "well-pleaded factual allegations"); *Ben-Davies*, 695 F. App'x at 676 (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)) (instructing that facial challenge to jurisdiction requires taking facts in the complaint as true). The facts alleged simply don't bear the fine distinctions and careful parsing the Center places on them. It cannot plead without limitation or nuance (and with a Rule 11(b) certification) that Bedat lacked mental capacity, could not manage his own affairs, and has dementia, and then—when the obvious issue of Bedat's capacity is raised—backtrack in its brief. "It is well-established that parties cannot amend their complaints

---

[4] The parties disagree whether Medicaid regulations permit an (otherwise effective) designated representative to sue for another over the denial of Medicaid benefits. *See* 42 C.F.R. § 435.923; *compare* dkt. 11-1 (Defs' Br.) at 7–8 *with* dkt. 18 (Pl's Br.) at ECF 13–16. The Court needn't decide the issue because of Bedat's lack of capacity. And even if he had capacity, the regulation instructs that Bedat's notarized, dated power of attorney to Henry C. Devening would prevail over the Center's designation form. *See* 42 C.F.R. § 435.923(a)(2); 78 Fed. Reg. 42160, 42175, 2013 WL 3488383 (July 15, 2013); *see also infra*.

through briefing." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 n.1 (4th Cir. 2017) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)). Confronted with the complaint's allegations, the Center can only hypothesize about Bedat's mental state. Without citation to anything (be it the complaint or otherwise), the Center asserts Bedat "still possessed sufficient competency to the point that a form, benefitting him and not adverse to his interests, could be explained to him and knowingly executed by him." (Dkt. 18 at ECF 17 (emphasis added)). The Court declines to credit such speculation against the complaint's contrary, clear, and unequivocal allegations.[5]

Even if one assumes Bedat was competent to assign power to act on his behalf, Defendants point out another problem, one the Court considers a factual challenge to jurisdiction. Defendants provided a copy of a power of attorney ("POA") from Bedat to attorney Henry C. Devening. (Dkt. 11-8). The POA authorizes Devening "to transact any and all of [Bedat's] business and to do and perform all things and acts relating to my property." (*Id*. at 1). The POA includes the power to collect, "demand[,] and sue for" any interests, monies, or sums which may become due to Bedat; "execute and perform all and every other act or acts" in furtherance of the "full and complete power to handle any of [Bedat's] business or to deal with any and all of [his] property of any kind"; "make health care decisions for" Bedat; have access to his medical records; admit Bedat to hospitals, nursing homes, and hospice; and "do any and all things which, in the opinion of [Bedat's] attorney, will be in [Bedat's] best interests." (*Id*. at ¶¶ 4, 12–13). The POA further provides it remains in effect until Bedat revokes it in writing, and

---

[5] It is also questionable whether the designation form is as obviously benevolent, "benefitting," and "not adverse" to Bedat's interests as the Center makes out. For instance, the form waives potential and actual conflicts of interests, as well as "any and all claims of confidentiality" about medical information received by the Center, "its employees and agents." (Dkt. 1-1 at ECF 2).

that it does not terminate "in the event of any disability or incapacity" of Bedat, but "shall continue and be exercisable by" the attorney.  (*Id.* at 2).

The POA is signed by Bedat.  It is notarized by public notary Angela L. Mayer, making his signature presumptively genuine, Va. Code § 64.2-1603, a presumption the Center has not attempted to rebut.  The POA was executed on November 14, 2016, and so by operation of law was effective from that date.  Va. Code § 64.2-1607(A).  The POA, then, was in effect before the Center filed this lawsuit and after it claims Bedat executed the designated representative form by October 3, 2016, (Complaint ¶ 19), thus allocating authority away from the Center.

Based on all this, Defendants argue that the Center lacks standing because it is Devening, not the Center, who has authority to act on Bedat's behalf.  As a threshold matter, the Center has conceded the issue by not contesting it in its response brief.  *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring opponent's argument is "an outright failure to join in the adversarial process [that] ordinarily result[s] in waiver"); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue."); *Taylor v. CVS, Inc.*, No. 3:16CV171, 2017 WL 6759625, at *1 n.5 (E.D. Va. Oct. 30, 2017) (compiling cases); *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010).  Defendants' argument also succeeds on the merits.

The POA is a notarized, dated, executed document, which the law thus accords special solicitude.  Va. Code §§ 64.2-1603, 64.2-1607(A).  There is no evidence rebutting the legal presumption that it is valid and in effect.  Specifically, there is nothing before the Court suggesting that, between the date of its execution and the date this lawsuit was filed, Bedat revoked the POA in writing.  (Dkt. 11-8 at 2).  Finally, this litigation falls within the POA's

scope, rebuffing the Center's asserted entitlement to litigate for Bedat. The POA authorizes Devening to sue to recover any funds that are or may be due to Bedat, which certainly describes this lawsuit, seeking as it does prospective Medicaid benefits from Defendants, as well as compensatory and other damages. (*E.g.*, Complaint ¶¶ 63–64, 68, 72–73, 79, 91, 95, Prayer for Relief). The POA also grants the power to make health care decisions for Bedat, select where he receives medical care, conduct any of his business, and to "do any and all things" in Bedat's best interests. Suing to obtain funds in order to pay for Bedat's medical care comes within the ambit of those grants. (*E.g.*, Complaint ¶¶ 12–13, 46). In sum, if Bedat is competent to delegate his affairs, the Center is not who they are delegated to.

In a final effort to establish standing, the Center asserts "organizational standing." (Dkt. 18 at ECF 18–19). Often called "associational standing," organizational standing exists when a "member" of an organization has standing to sue on his own, the interests the organization seeks to protect are germane to the organization's purpose, and neither the claim nor the relief sought requires the individual's participation. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996); *Lane v. Holder*, 703 F.3d 668, 674 n.6 (4th Cir. 2012).

Defendants observe that this theory of standing is at odds with the complaint. In both its caption and body, it characterized the Center as acting as Bedat's "authorized representative," not based on its organizational status. (Complaint ¶ 1). What's more, there is nothing in the complaint to indicate that the Center is the type of organization that has members, or that Bedat is one. The Center is a Virginia corporation and a "skilled nursing facility" that provides "long-term care for its residents." (*Id.* ¶¶ 1, 9). As Defendants point out, "[n]owhere in the Complaint does [the Center] ever refer to itself as an organization with members; and nowhere in the

Complaint does [it] ever refer to Bedat as a 'member.'" Dkt. 21 at 9; *see Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (holding that lack of membership is fatal to claim of organizational standing); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 286–88 (3d Cir. 2014) (holding complaint and supplements failed to demonstrate organization could have and did have members); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 196 (2d Cir. 2000) (denying intervention of organization for lack of standing where record failed to bear out whether it was a membership organization or its equivalent); *Heap v. Carter*, 112 F. Supp. 3d 402, 418 (E.D. Va. 2015) (finding no associational standing where complaint "provided no details about who the membership is or whether [the organization] truly can be considered a voluntary membership organization or a functional equivalent").

The Center's brief calls Bedat a "constituent," as if he was a part of the Center in the way that one is a member of a civic group, trade or bar association, or political party. (Dkt. 18 at ECF 18). It is these latter types of membership organizations to which the associational standing paradigm historically applies. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343–45 (1977) (reviewing origins of doctrine and finding state created commission whose members were elected by apple growers and activities financed by them had associational standing for the growers). More accurately, Bedat is a patient, and more accurately than that, he is a customer: The Center provides housing and health care in exchange for payment. That is simply not the kind of relationship that gives rise to organizational standing. *E.g.*, *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106 (9th Cir. 2006) (explaining that "allegations in the complaint make clear that 'members' of Flex are merely customers" and its purpose "is to turn a profit," so associational standing was absent). At least three cases in the last six months—all in which the Center's present counsel, Katie Van Lake,

was counsel of record—have reached the same conclusion: A corporate nursing home does not have organizational standing for its residents, who are its clients or customers, not its members. *Carespring Healthcare Mgmt., LLC v. Dungey*, No. 1:16-CV-1051, 2018 WL 1138428, at *8–9 & n.2 (S.D. Ohio Mar. 2, 2018); *Hillspring Health Care Ctr., LLC v. Dungey*, No. 1:17-CV-35, 2018 WL 287954, at *6 n.12 (S.D. Ohio Jan. 4, 2018); *Diversicare v. Glisson*, No. CV 16-141-HRW, 2017 WL 4873510, at *4 (E.D. Ky. Oct. 27, 2017); *see also Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000); *Allstate Ins. Co. v. City of Chicago*, No. 02 C 5456, 2003 WL 1877670, at *4 (N.D. Ill. Apr. 14, 2003).

Absent from the complaint (or the record) is any allegation (or evidence) that the Center has members or otherwise "is the functional equivalent of a traditional membership organization" with its residents sharing "all of the indicia of membership in an organization." *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing and quoting *Hunt*, 432 U.S. at 342–45)). And there is nothing suggesting that the Center's residents (and Bedat in particular) play any role in selecting its leadership, guiding its policy or activities, or managing its affairs. *See id*. at 26 (citing *American Legal Found. v. FCC*, 808 F.3d 84, 90 (D.C. Cir. 1987)); *Hunt*, 432 U.S. at 344–45. Indeed, it's hard to see how Bedat could decide to do so and act on that choice, given the allegations that he lacks mental capacity, suffers dementia, cannot manager his own affairs, and needs around-the-clock care. *See Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 158–59 (2d Cir. 2012) ("Tellingly, there is scant evidence in the record that the individuals with mental illness whom [the organization] purports to represent have the power to elect its directors, make budget decisions, or influence [its] activities or litigation strategies."); *Ass'n for Retarded Citizens of Dallas v.*

*Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994).

At bottom, the Center's view of organizational standing would arrogate to any corporate entity running a nursing home or medical facility the power to litigate the rights of its dozens, or hundreds, or thousands of patient-customers. The doctrine is not that expansive. *See Fleck*, 471 F.3d at 1106; *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 198 F. Supp. 2d 744, 760 (E.D. Va. 2002), *aff'd*, 320 F.3d 475, 481 (4th Cir. 2003).

* * *

Finally, the Court turns to an important ancillary matter. Federal Rule of Civil Procedure 5.2(a)(1) requires a party who files a document containing a social security number ("SSN") to redact all but the last four digits of the SSN. This district's local rules command that "[t]he responsibility for redacting personal identifiers as required by the federal rules of procedure rests solely with counsel . . . ." W.D. Va. Local Civ. R. 8; *see* Fed. R. Civ. P. 5.2 (advisory committee note placing onus of redaction on party or its attorney). The Center has twice filed Bedat's designated representative form, and each time the Center has failed to redact Bedat's SSN. (Dkt. 1-1; dkt. 18-1).

The Clerk is **ORDERED** to place docket entries 1-1 and 18-1 under temporary seal. Counsel for the Center is hereby **ORDERED** to submit to the Clerk, within one business day of the entry of this opinion, a properly redacted copy of the form. The Clerk and Defendants' counsel are **ORDERED** to proceed likewise as to docket entry 11-2, which also includes Bedat's unredacted SSN. Further, counsel for all parties are **ORDERED** to: (1) review *all* of their respective filings in this case, which include various administrative and medical records; (2) submit to the Clerk any other properly redacted documents that may be necessary to bring the

docket into compliance with Rule 5.2, and; (3) within seven days of entry of this opinion, file a signed certification affirming compliance with this Order and verifying that no unredacted personal identifiers remain on the docket. Counsel are reminded that it is their obligation to ensure the redaction of personal identifiers, and they are cautioned that failure to comply with the instant Order or their duty to redact in the future may expose them to sanctions.

An appropriate order regarding the motion to dismiss will issue separately.

Entered this  17th  day of April, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE